UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SAINT CRISPIN ROWE, | Case No.:  26-cv-01744-GPC-DEB |
| Petitioner, | |
| v. | **ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS** |
| GREGORY J. ARCHAMBEAULT, Field Office Director of the San Diego Field Office of U.S. Immigration and Customs Enforcement; *et al.*, | |
| | **[ECF No. 1]** |
| Respondents. | |

On March 19, 2026, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1 ("Pet."). On March 25, 2026, Respondents filed a return to the petition. ECF No. 4 ("Ret."). For the following reasons, the Court GRANTS IN PART the petition for writ of habeas corpus.

I.   **BACKGROUND**

a.  **Factual Background**

Petitioner is a 73-year-old citizen of Jamaica. Pet. ¶ 30. He has been a permanent resident of the United States since January 5, 1973 and has lived most of his adult life in

1

Georgia. *Id*. His entire family lives in this country, all of which are US citizens, including his deceased parents. *Id*. ¶ 31.

On June 16, 2014, Petitioner was convicted of Georgia Code Annotated 16-9-121 for the offense of Identity Fraud, a Crime Involving Moral Turpitude (CIMT). Ret. at 2. He was sentenced to two years of confinement. *Id*. This conviction makes Petitioner subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(A). *Id*.

On March 23, 2023, Petitioner arrived at the William P. Hobby Airport in Houston, TX and applied for admission to the U.S. as a lawful permanent resident. *Id*. Petitioner's inspection was deferred as he was found to be inadmissible pursuant to INA 212(a)(2)(A)(i). *Id*. He was then served a Notice to Appear on June 20, 2023. *Id*.; Pet. ¶ 35.

On April 9, 2025, Petitioner arrived at the Los Angeles International Airport and applied for admission to the U.S. as a returning lawful permanent resident. Ret. at 2; Pet. ¶ 32. Rather than releasing him, Respondents detained him and transferred him to the Otay Mesa Detention Center. Pet. ¶ 33.

Petitioner was previously notified that he was not entitled to a bond hearing. *Id*. ¶ 34. As of the filing of the Petition, Petitioner has been detained for approximately twelve months, with no final order of removal. *Id*.

### b. Procedural Background

On March 19, 2026, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1 ("Pet"). On March 25, 2026, Respondent filed a Response to Petition for Writ of Habeas Corpus. ECF No. 4 ("Ret"). On March 27, 2026, Petitioner filed a traverse. ECF No. 5 ("Trv.").

Petitioner challenges the legality of his continued immigration detention by DHS and its component agencies, asserting that his detention violates the Due Process Clause of the Fifth Amendment, the Eighth Amendment, and the INA. Pet. ¶¶ 53-67.

26-cv-1744-GPC-DEB

As relief, Petitioner requests that the Court issue a writ of habeas corpus ordering his immediate release from custody. Pet. at 22. In the alternative, Petitioner asks the Court to order Respondents to provide a prompt and individualized bond hearing. *Id*.

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004). As explained by the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and…the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023) (habeas actions limited to challenges of the legality or duration of confinement).

A prisoner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

## III.  DISCUSSION

### a.  Jurisdiction

Petitioner invokes this Court's jurisdiction under the habeas provision, 28 U.S.C. § 2241, the Suspension Clause, federal question, 28 U.S.C. § 1331, and the APA, 5 U.S.C. § 702. Pet. ¶ 13. Respondents maintain that this Court lacks jurisdiction over Petitioner's claims, stating that the claims and relief are barred by 8 U.S.C. § 1252(g). Ret. at 4-5.

8 U.S.C. § 1252(g) states that, with limited exceptions, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien." 8 U.S.C. § 1252(g) (emphasis added); *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 482 (1999). In that light, § 1252(g) is a narrow statutory provision that concentrates on those three discrete actions. *Reno*, 525 U.S. at 482.

26-cv-1744-GPC-DEB

Respondents argue that the § 1252(g) bar applies because Petitioner's claims arise "from the Department of Homeland Security's decision to commence removal proceedings against him." Ret. at 4. Specifically, the government's decision "unavoidably triggers mandatory detention under 8 U.S.C. § 1225(b)(2) until the conclusion of his removal proceedings." *Id*. However, rather than challenging the decision to commence proceedings, Petitioner challenges the legality of his detainment, specifically objecting to the prolonged length of detention. Detainment of Petitioner does not fall within the three discrete actions identified in § 1252(g) and, thus, would not deprive the Court's jurisdiction. *See, e.g.*, *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 704 (D. Minn. 2025) (finding a claim against detention did not fall under Section 1252(g)); *Mahdawi v. Trump*, 781 F. Supp. 3d 214, 224-26 (D. Vt. 2025) (same); *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 901 (D. Minn. 2020) ("Although the court may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution.").

### b. Merits

Petitioner claims that his detention violates the Fifth Amendment's Due Process Clause. Pet. ¶¶ 53-58. Respondents, in turn, maintain that Petitioner is mandatorily detained under 8 U.S.C. §§ 1225(b)(2), 1226(c)(1)(A) and has not been subjected to unconstitutionally prolonged detention. Ret. at 5-10.

### i. Detainment Under the INA

Section 1225(b)(2)(A) requires mandatory detention if the individual is an applicant for admission and "the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). However, the application of expedited removal is limited to noncitizens who meet several requirements. One of those requirements cabins initiation of expedited removal to noncitizens who (1) are categorized as "arriving in the United States," or (2) have "not been admitted or paroled into the United States" and cannot affirmatively show

4

they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(i)–(iii); *see also Coalition for Human Immigrant Rights v. Noem*, No. 25 Civ. 872 (JMC), 2025 WL 2192986, at *30 (D.D.C. Aug. 1, 2025).

Here, Petitioner is a noncitizen and was an applicant for admission when he arrived at Los Angeles International Airport on April 9, 2025. *See* 8 U.S.C. § 1225(a)(1). However, he was paroled into the United States the day after his arrival. *See* Trv., Ex. A. Thus, Petitioner is not lawfully detained under 8 U.S.C. § 1225(b)(2).

Section 1226(c)(1)(A) requires mandatory detention of a noncitizen who "is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title." 8 U.S.C. § 1226(c)(1)(A). Those offenses include "a crime involving moral turpitude." 8 U.S.C. § 1182(a)(2)(A)(i)(I). Crimes of moral turpitude fall into two categories: "[1] those involving fraud and [2] those involving grave acts of baseness or depravity." *Robles-Urrea v. Holder*, 678 F.3d 702, 708 (9th Cir. 2012); *Ortega-Lopez v. Barr*, 978 F.3d 680, 685 n.4 (9th Cir. 2020).

On June 16, 2014, Petitioner was convicted for the offense of Identity Fraud, which is a crime of moral turpitude. Ret., Ex. 3. An immigration officer determined Petitioner was inadmissible based on that prior CIMT conviction under 8 U.S.C. § 1182(a)(2)(A)(i)(I). *Id*. These facts indicate that Petitioner falls within the purview of Section 1226(c).

Thus, Petitioner is lawfully detained under 8 U.S.C. § 1226(c)(1)(A).

### ii.  Prolonged Detention

### 1.  Entitlement to Due Process Claim

While Petitioner is mandatorily detained, he has raised a due process claim, arguing that his detention has exceeded a reasonable duration under the Fifth Amendment, particularly in light of the absence of a final order of removal and the anticipated length of his ongoing removal proceedings. Pet. ¶ 56. Petitioner contends that

5

continued detention no longer serves a legitimate governmental purpose and that procedural due process requires, at minimum, an individualized custody determination. *Id*. ¶ 55.

Respondents respond, relying on *Thuraissigiam*, that inadmissible arriving noncitizens have no due process rights other than those afforded by statute. Ret. at 7-10.

In *Thuraissigiam*, the respondent was a noncitizen detained close to the border and shortly after unlawful entry. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). The Supreme Court held that those "in respondent's position ha[ve] only those rights regarding admission that Congress has provided by statute." Ret. at 6-7.

Since *Thuraissigiam* was decided, district courts have taken two different approaches. In one, district courts have dismissed or denied habeas petitions that raise due process challenges, which go beyond statutory procedures and protections. *See, e.g.*, *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 669 (S.D. Tex. 2021) ("As far as Petitioner is concerned, whatever procedure Congress has authorized is sufficient due process."); *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d 329, 336 (W.D.N.Y. 2021) ("Petitioner is on the threshold of initial entry into the United States and [ ] he accordingly is not entitled to procedural protections beyond those provided by statute."); *Zelaya-Gonzalez v. Matuszewski*, No. 23-CV-151-JLS-KSC, 2023 WL 3103811, at *4 (S.D. Cal. Apr. 25, 2023) ("Binding Ninth Circuit and Supreme Court precedents are clear that Petitioner lacks any rights beyond those conferred by statute, and no statute entitles Petitioner to a bond hearing."); *Mendoza-Linares v. Garland*, No. 21-CV-1169-BEN-AHG, 2024 WL 3316306, at *2 (S.D. Cal. June 10, 2024) (same).

However, a majority of courts have opted for an alternative, as-applied approach. Specifically, while facial challenges to mandatory detention have been rejected, *see Demore v. Kim,* 538 U.S. 510, 530-31 (2003), nothing has been said "about whether due process may *eventually* require a hearing." *Black v. Decker*, 103 F.4th 133, 149 (2d Cir. 2024) (emphasis in original). This is also true for *Thuraissigiam*. Though *Thuraissigiam*

limits an arriving noncitizen's due process rights in regard to admission, the court did not address the issue of prolonged detention. *See Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023) ("*Thuraissigiam*'s discussion of due process is necessarily constrained to challenges to admissibility to the United States. This was the sole claim presented and the respondent expressly asked for a chance to reapply for asylum and admission.").

Additionally, "the Supreme Court has…explicitly stated that as-applied constitutional challenges to 8 U.S.C. § 1226(c)[, which cover mandatory detention under that statute,] are not foreclosed." *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *5 (E.D. Cal. July 25, 2025). While the Ninth Circuit has not ruled on whether due process requires a bond hearing for noncitizens mandatorily detained, the First, Second, and Third Circuits have held that "the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention ... under [section 1226(c)]." *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021) (alterations in original) (citation omitted); *see Black*, 103 F.4th at 138; *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 209-10 (3d Cir. 2020). Though § 1225(b) was not specifically addressed by the Supreme Court or the three Circuit courts, § 1225(b) contains similar mandatory detention provisions to § 1226(c). Thus, the reasoning underlying this as-applied approach would logically apply to detention under § 1225(b).

Given this background, a majority of district courts have found prolonged detention under § 1225(b) without a bond hearing can eventually give rise to due process issues. *See, e.g.*, *Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *2 (S.D. Cal. Nov. 12, 2025) ("This Court agrees with the majority position that a petitioner detained under Section 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing."); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 25-cv-98-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("Although the Ninth Circuit has yet to take a position on whether due process requires a

7

26-cv-1744-GPC-DEB

bond hearing for noncitizens detained under 8 U.S.C. § 1225(b)…'essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'") (quoting *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019)); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019) (collecting cases); *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) ("Nowhere in [*Thuraissigiam*] did the Supreme Court suggest that arriving aliens being held under § 1225(b) may be held indefinitely and unreasonably with no due process implications, nor that such aliens have no due process rights whatsoever.").

The Court agrees with the majority. While *Thuraissigiam* limits an arriving noncitizen's due process rights in regard to admission, a petitioner may still assert a due process claim against prolonged mandatory detention without a bond hearing.

### 2. Violation of Due Process

To determine whether a petitioner's detention has been unreasonably prolonged, the Court applies the *Banda v. McAleenan*'s six-factor analysis as a framework, which weighs: (1) total length of detention to date; (2) likely duration of future detention; (3) conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal. *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019).[1]

---

[1] Respondent offers a similar three-factor balancing test from *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022). Given that all factors considered in the *Lopez* test are

26-cv-1744-GPC-DEB

**Total Length of Detention to Date.** Petitioner has been detained for approximately twelve months. Trv. At 2. Petitioner argues that this detention is, thus, prolonged, as detention exceeding six months is unreasonable. Pet. ¶ 55. Respondents, however, maintain that Petitioner's current detention "does not fall within the range [that] those courts have found to be unreasonable." Ret. at 10. In Respondents' view, detention should be for a much longer period to be unreasonably prolonged. *Id*.

While close to twelve months of detention does not presumptively establish unreasonably prolonged detention, it is also not so little time as to preclude constitutional scrutiny. *See Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *3 (S.D. Cal. Nov. 12, 2025) ("The Court agrees with Respondents that the length of Petitioner's detention to date—almost 12 months—does not by itself, without more, establish prolonged detention in violation of due process. But neither does that length of detention serve as a safe harbor or insulate Petitioner's case from constitutional review."). Additionally, courts have previously found that similar or shorter lengths of detention were unreasonable. *See, e.g.*, *Gao v. LaRose*, No. 25-CV-2084-RSH-SBC, 2025 WL 2770633, at *5 (S.D. Cal. Sept. 26, 2025) ("The Court finds that Petitioner's detention for over 10 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process."); *Amado v. United States Dep't of Just.*, No. 25-CV-2687-LL-DDL, 2025 WL 3079052, at *6 (S.D. Cal. Nov. 4, 2025) ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable."); *Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) (finding detention for nearly nine months weighs in favor of the petitioner).

---

encapsulated in the *Banda* framework, the Court shall apply the more comprehensive *Banda* framework.

Thus, this factor weighs in favor of Petitioner, though it is not determinative alone.

**Likely Duration of Future Detention.** The second factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of all removal proceedings—including administrative and judicial appeals.'" *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1119 (W.D. Wash. 2019) (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019)).

Here, Petitioner's individual merits hearing to adjudicate his asylum application is scheduled for April 21, 2026. Trv. at 4. "While the Court cannot definitively determine the duration of petitioner's future detention, based on the current record, it appears likely petitioner will face many more months and potentially years in detention," especially if there is a petition for review before the Court of Appeals. *Belqasim v. Bostock*, No. 2:25-CV-01282-LK-TLF, 2025 WL 3466971, at *9 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted sub nom. Belqasim v. Hermosillo*, No. 2:25-CV-01282-LK, 2025 WL 3170929 (W.D. Wash. Nov. 13, 2025); *Guatam v. Corr. Corp. of Am.*, No. 3:25-CV-3600-JES-DEB, 2026 WL 25846, at *5 (S.D. Cal. Jan. 5, 2026) ("[A] removal order may not become final until after the appeals Petitioner could file, to both the Board of Immigration Appeals and Ninth Circuit…These appeals can take a long time."); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *7 (E.D. Cal. July 25, 2025) ("Although the Court recognizes that future events are difficult to predict, the Court nevertheless finds that in the event Petitioner's applications for relief from removal are denied, Petitioner's possible administrative appeal and judicial review by the Ninth Circuit will be sufficiently lengthy such that this factor weighs in favor of Petitioner.").

Thus, the Court finds this factor falls in favor of Petitioner.

**Conditions of Detention.** For the third factor, "[t]he more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted).

26-cv-1744-GPC-DEB

Courts have recognized that the conditions at the Otay Mesa Detention Center are "indistinguishable from penal confinement." *See Kydyrali v. Wolf,* 499 F. Supp. 3d 768, 773 (S.D. Cal. 2020); *Amado v. United States Dep't of Just.*, No. 25-CV-2687-LL-DDL, 2025 WL 3079052, at *6 (S.D. Cal. Nov. 4, 2025). Thus, this factor weighs in favor of Petitioner.

**Delays in Removal.** The fourth and fifth factors concern delays in the removal proceedings caused by Petitioner or the government. In terms of the fourth factor, neither party has indicated Petitioner caused any undue delays. Accordingly, this factor is neutral.

As for the fifth factor, Petitioner maintains that Respondents' actions have contributed significantly to the delay in Petitioner's proceedings. Pet. ¶ 56. Petitioner claims that he has experienced delays caused by the government's inefficient procedure of detaining him in California, while needing to transport him to the Atlanta court for his immigration hearings. *Id*. This delay slightly weighs in favor of Petitioner.

In sum, the fourth factor remains neutral, and the fifth factor slightly weighs in favor of Petitioner.

**Likelihood of Final Removal Order.** For the sixth *Banda* factor, the Court evaluates the likelihood that the removal proceedings will result in a final order of removal, or "[i]n other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Banda*, 385 F. Supp. 3d at 1120. Here, Petitioner claims a final order of removal is unlikely because Petitioner has not committed a serious felony nor two or more crimes of moral turpitude. Pet. ¶ 56. He has also been a permanent resident for more than fifty years. *Id*. While it remains unclear how an IJ will eventually rule, Petitioner has so far presented a defense which reduces the likelihood of a final removal order. Thus, the Court finds this factor slightly favors Petitioner.

**Weighing the Factors.** In sum, at least five of the six factors weigh in favor Petitioner, with the other factor being neutral. Accordingly, the Court concludes that Petitioner's detention has become unreasonably prolonged. Thus, Petitioner is entitled to a

11

prompt and individualized bond hearing, where Respondents must justify Petitioner's continued detention "by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released." *Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *4 (S.D. Cal. Nov. 12, 2025); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *9 (E.D. Cal. July 25, 2025); *Toktosunov v. Wamsley*, No. 2:25-CV-1724-TL, 2025 WL 3492858, at *6 (W.D. Wash. Dec. 5, 2025).[2]

## IV.    CONCLUSION

Based on the reasoning above, the Court **GRANTS IN PART** the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

In his petition, Petitioner requests release, or in the alternative, a bond hearing before an immigration judge. Pet. at 22. "The Court finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge[.]" *Lopez v. Garland*, 631 F. Supp. 3d 870, 882 (E.D. Cal. 2022); *Abdul-Samed*, 2025 WL 2099343, at *9. If Respondents fail to comply with this order, Petitioner may seek further relief from the Court at that time.

Accordingly, the Court **ORDERS** Respondents to provide Petitioner with a bond hearing within seven (7) days of this Order. Respondents are **ORDERED** to **FILE** a Notice of Compliance within ten days of providing Petitioner with a bond hearing. The Clerk of Court **SHALL** enter judgment in Petitioner's favor and close this case. The Court

/ / /

/ / /

/ / /

---

[2] As the Court has found in Petitioner's favor on his first claim, the Court declines to discuss Petitioner's remaining claims.

**VACATES** the hearing set for April 3, 2026.

      **IT IS SO ORDERED.**

Dated:  March 31, 2026

Hon. Gonzalo P. Curiel
United States District Judge

26-cv-1744-GPC-DEB